# STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**WAL-MART ASSOCIATES, INC.,**
**Employer Below, Petitioner**

**vs.)    No. 18-0466** (BOR Appeal No. 2052322)
                    (Claim No. 2016028079)

**RICHARD A. BASHAM,**
**Claimant Below, Respondent**

**FILED**

**November 2, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Wal-Mart Associates, Inc. by Karin L. Weingart, its attorney, appeals the decision of the West Virginia Workers' Compensation Board of Review. Richard A. Basham did not file a reply to the petition for appeal.

The issue on appeal is compensability. On July 5, 2016, the claims administrator rejected Mr. Basham's application for workers' compensation benefits. The Workers' Compensation Office of Judges reversed the claims administrator's decision in an Order dated November 17, 2017. The Office of Judges held the claim compensable for visual field defect and retinal detachment of the left eye. This appeal arises from the Board of Review's Final Order dated April 20, 2018, in which the Board affirmed the decision of the Office of Judges. The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Basham was working as a greeter at Wal-Mart on April 28, 2016, when he caught his foot on a tile and fell backwards, alleging injuries to his eye and tailbone. Mr. Basham was first seen at MedExpress where he reported pain to his right hip and that he was experiencing visual changes to his right eye. MedExpress recommended referral to the nearest emergency department for further evaluation. The report was signed by James Wright, D.O.

1

Mr. Basham was transferred via ambulance to Beckley Appalachian Regional Hospital where he stated that he could only see red from his left eye. The emergency room report noted that the patient is elderly and walks with a cane. A CT scan of the head was performed. There was no evidence of skull fracture. Brain imaging studies showed nothing acute. X-ray evidence revealed no significant soft tissue changes for the sacrum/coccyx, and no significant soft tissue changes of the lumbar spine. Film of the spine showed extensive degenerative arthritis of the lumbar vertebrae, diffused. Mr. Basham was discharged home in stable condition and was given pain medication. The emergency room note was signed by Joseph Nnadike, M.D.

Mr. Basham was referred to Retina Consultants in Charleston where he was evaluated by R. Mark Hatfield, M.D., on April 29, 2016. Mr. Basham was informed of the presence of a retinal detachment similar to what had developed in his right eye several years earlier in 2015. Dr. Hatfield assessed Mr. Basham with new onset detachment with macular hold, left eye; past retinal detachment, post buckle/vitrectomy, right eye; bilateral pseudophakia; inferotemporal rim thinning, right eye; and PVD OS. Mr. Basham was advised of the presence of the retinal detachment similar to what had developed in his right eye and elected to proceed with buckle/vitrectomy surgery. Dr. Hatfield performed the procedure at Saint Francis Hospital on May 4, 2016. Mr. Basham tolerated the procedure without difficulty.

By Order dated July 5, 2016, the claims administrator rejected Mr. Basham's application for workers' compensation benefits. The claims administrator stated that it was unable to determine that an injury occurred as a result of Mr. Basham's employment. Mr. Basham protested the claims administrator's decision.

Mr. Basham testified at a deposition conducted on October 24, 2016. He testified that he was checking receipts as a people greeter on April 28, 2016, when he caught his foot on a tile in the floor. He fell into a sign that was bolted to the floor by the door. He hit his bottom on the floor and his head on the sign. He did not lose consciousness and was able to stand unassisted. When he got up, he saw black. Mr. Basham testified that at the time of the fall he was not experiencing any vision problems but he did state that he had prior surgery to correct a detached retina in his right eye. Mr. Basham stated that he was able to complete an Accident Report, with assistance from an associate. Mr. Basham sought treatment at MedExpress before he was taken to Beckley Appalachian Regional Hospital. Mr. Basham testified that he has had problems with his back prior to his injury. However, he stated that his back has been worse since the alleged work incident. He acknowledged that he sometimes needs the assistance of a cane due to balance issues. At the time of the alleged work incident, the cane was in his left hand and he fell to the right. Mr. Basham testified that he had never had any surgery of any kind to his left eye before April 28, 2016, and he was receiving no treatment for that eye prior to April 2016.

Michael J. Kominsky, D.C., conducted an independent medical evaluation of Mr. Basham on May 4, 2017. Dr. Kominsky concluded that Mr. Basham sustained injuries to his left eye, head, cervical, thoracic spine, and lumbar spine on April 28, 2016, when he fell at work. At the time of the evaluation, Mr. Basham complained of neck pain, mid-back pain, and lower back pain that he described as a burning, stabbing feeling. Dr. Kominsky found that Mr. Basham was unable to work due to the injuries he sustained on April 28, 2016. Conservative treatment was

suggested to treat Mr. Basham's injuries. Dr. Kominsky requested authorization for eighteen physical medical treatments, an upper EMG study, and temporary total disability benefits from April 28, 2016, through September 1, 2016.

Ghassan Y. Dagher, M.D., an ophthalmologist, reviewed Mr. Basham's past medical records, the deposition and the surveillance video of the incident, and authored a report dated August 8, 2017. Dr. Dagher concluded that there is no direct causality between his episode at work and his retinal detachment. Dr. Dagher stated that it is extremely unlikely that Mr. Basham had a sudden total detachment and that a logical explanation would be that the process of detachment started days or weeks earlier, similar to what occurred with his right eye. Dr. Dagher concluded that the preponderance of the evidence leads him to believe that the occurrence of spontaneous retinal detachment in the left eye was inevitable and not related to Mr. Basham's fall on April 28, 2016. Dr. Dagher reported that he watched the surveillance video of the fall and noticed that Mr. Basham was excessively rubbing his eyes. Dr. Dagher noted that excessive rubbing of the eye impacts a high pressure on the intraocular structures, including a weakened retina that may have potential breaks and can result in detachment. It was Dr. Dagher's professional opinion that there is no direct causality between Mr. Basham's episode at work and his retinal detachment.

A series of historical medical records from Mr. Basham's primary care physician, Mustafa Rahim, M.D., was submitted by the employer. Dr. Rahim had been treating Mr. Basham for multiple problems including chronic, significant lower back pain. On May 6, 2010, Mr. Basham presented to Dr. Rahim with complaints of pain in the lower back, neck, hand and legs. Dr. Rahim's assessment included lumbosacral sprain. A lumbar spine x-ray taken on May 10, 2010, revealed a scoliotic lumbar spine, multilevel degenerative disc disease with disc space decrease, anterior degenerative changes of the lumbar spine, and bilateral lower lumbar facet arthritis. On September 11, 2012, Mr. Basham presented with complaints including spinal stenosis and degenerative joint disease. Over the years, Mr. Basham presented multiple times to Dr. Rahim with complaints of low back pain that resulted in assessments of chronic low back pain likely secondary to spinal stenosis complicating degenerative joint disease and gait dysfunction.

The Office of Judges found that Mr. Basham proved by a preponderance of the evidence that he sustained a personal injury in the course of and resulting from his employment on April 28, 2016. The Office of Judges specifically found that Mr. Basham sustained visual loss and a retinal detachment of his left eye as a result of the injury. Video surveillance shows that Mr. Basham tripped over an area of a raised tile and fell backward into an advertisement sign which was bolted to the floor. His head struck the sign and the back side of his body hit the floor. The Office of Judges noted that Mr. Basham reported blurry vision and eye pain after the fall. When he reported to Beckley Appalachian Regional Hospital, Mr. Basham reported that he had undergone prior corneal surgery and he was afraid that it may have moved because he was seeing red and yellow in his left eye following the fall. Mr. Basham was seen by Dr. Hatfield, of Retinal Consultants, PLLC, on April 29, 2016. Dr. Hatfield found that the macula of Mr. Basham's left eye was totally detached. Dr. Hatfield assessed new onset retinal detachment with macular hole OS. The Office of Judges reasoned that the evidence of record does not show that Mr. Basham

had any degree of retinal detachment of the left eye prior to his fall on April 28, 2016. In 2009, David J. Hunt, M.D., of Retina Consultants reported on February 25, 2009, that Mr. Basham's left eye was visually asymptomatic. Even though Mr. Basham developed a cataract in his left eye, Dr. Hunt noted that an anterior retinal exam conducted on June 5, 2012, showed that the left eye was unremarkable. Mr. Basham underwent surgery on the left eye on March 4, 2015, for senile cataract, however a retinal detachment was not listed in the operative report. On March 8, 2016, less than two months prior to his injury, Mr. Basham was examined by Mustafa Rahim, M.D., who reported that Mr. Basham had no symptoms of blurred vision and he had a normal eye examination. The Office of Judges found that the evidence supports the opinion that Mr. Basham did not have a retinal detachment of the left eye prior to April 28, 2016.

The Office of Judges specifically found that the report of Dr. Dagher does not preponderate over the evidence within the record and that Dr. Dagher's interpretation of the video surveillance is contrary to the evidence of record. The Office of Judge concluded that Dr. Dagher's extrapolation of his video surveillance observations into a finding that Mr. Basham has a history of excessive left eye rubbing renders his report less reliable. It was concluded that Mr. Basham sustained visual loss and retinal detachment in the course of and resulting from his employment on April 28, 2016.

In its Order, dated November 17, 2017, the Office of Judges reversed the claims administrator's July 5, 2016, Order, and held the claim compensable for visual field defect and retinal detachment of the left eye. The Office of Judges relied upon the report of Dr. Hatfield, who reported that Mr. Basham experienced a new onset retinal detachment on April 28, 2016. The Office of Judges reasoned that the medical record does not show that Mr. Basham had any left eye problems prior to the injury on April 28, 2016. Instead, the evidence shows that Mr. Basham experienced an onset of symptoms immediately following the injury on April 28, 2016. The Board of Review adopted the findings and conclusions of law found by the Office of Judges in its Order dated April 20, 2018, and affirmed the decision of the Office of Judges.

After review, we agree with the reasoning and conclusions of the Office of Judges as affirmed by the Board of Review. Dr. Hatfield found that Mr. Basham had a total macula detachment in his left eye on April 29, 2016, one day after his fall at work. Mr. Basham has shown that he sustained an injury in the course of and resulting from his employment. The medical record supports the decision of the Office of Judges and Board of Review.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED:** November 2, 2018

4

**CONCURRED IN BY:**
Chief Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Paul T. Farrell sitting by temporary assignment
Justice Tim Armstead
Justice Evan H. Jenkins

Justice Allen H. Loughry II suspended and therefore not participating.